## LUFT v. BORZYKOWSKI.

*Contracts—Offer and acceptance by two letters—Third letter not part of agreement, when—Compensation based on benefits, not limited to cash received—Agreement not to participate in competing undertaking—Not violated by engaging with foreign corporation.*

1. Where a written contract consists of an offer in the form of a letter and an acceptance in a separate letter signed by the offeree, a subsequent letter, in which the offeror attempts to explain some of the terms contained in the original letter, cannot be considered a part of the original agreement, where there is no proof that the offeree consented to such explanation or interpretation.

2. A contract whereby defendant, in consideration of plaintiff's cooperation in the working out of processes and patents concerning the manufacture of a particular product, agrees to pay plaintiff "ten per cent of the benefits of every kind and description (draught for draught), which I shall get from every instance of utilization of the processes," etc., means an accounting upon the receipts of all benefits derived by the defendant, and is not limited to the actual cash money received.

3. A further provision of the contract that plaintiff "will not participate neither materially or actively in any competing undertaking (enterprise) (concern)," is not violated so as to work a forfeiture of plaintiff's rights under the contract by plaintiff's engagement, in a foreign country, with a foreign corporation doing business in such foreign country, where the processes used by the foreign corporation were not the processes of the defendant, where defendant held no patents on his processes in such foreign country, and where the foreign corporation did not engage in export or international trade, and did no export business.

(Decided October 29, 1923.)

APPEAL: Court of Appeals for the Eighth Appellate District.

*Messrs. Doerfler & Kornhauser,* for plaintiff.
*Mr. J. H. Holding* and *Mr. J. B. Keenan,* for defendant.

HAMILTON, J.   Plaintiff brought this . action in the Court of Common Pleas of Cuyahoga county, Ohio, praying for an accounting and specific performance, basing his claim on a written agreement, entered into about August 7, 1914, in Germany.  The trial court found in favor of the plaintiff, and entered a decree in his favor.  From that decree, the defendant appeals to this court.

Plaintiff, Luft, at the time the contract was entered into, was a German Austrian, and defendant Borzykowski was a citizen of Russia.  Both parties were, at the time of entering into the contract, and for some years prior thereto, residents of Germany.  Plaintiff was a graduate chemist and an expert in his line.  Defendant, Borzykowski, was the owner of certain patents and processes for the manufacture of artificial silk.

Plaintiff claims that as such expert chemist he had experimented and rendered services in the preparation of the processes for the manufacture of artificial silk, and had to some extent, at least, collaborated with Borzykowski in developing plans relative to the manufacture of artificial silk.

The written agreement, on which plaintiff bases his cause of action, as above stated, was entered into in Germany, and was written in the German language.  A translation of the contract was made by two expert linguists, selected by the parties, which translation is accepted by the court.  It is as follows:

"B. Borzykowski,
"General Director　　　　　Privatbureau
　　der　　　　　　Charlottenburg-Berlin,
"Boroid, Ltd., London,　　　Aug. 7, 1914.
"Noroid Co. m. b. H. Berlin　Neue Kanstr. 1.
"To Doctor Engineer Max Luft,
　"Berlin,
　　"Joachim Friedrich St., 42.

"In consideration of your co-operation in the working out of the processes and patents concerning the manufacture of artificial silk, I hereby bind myself to pay you 10 (ten) per cent. of the benefits of every kind and description (draught for draught), which I shall get from every instance of ultilization of the processes respectively patents at the establishing of concerns for production of artificial silk according to the viscose process, from the sale of the patents in question, from the granting of licenses, etc.

"To this 10 per cent. share of my benefits in the above mentioned cases you, respectively your legal heirs are entitled—without any (objection) or restriction whatever—as long as I or my legal heirs are entitled to these benefits.

"It is a condition of this contract that you, when so requested, as my representative, undertake the establishing and direction of one or the other fabrication of artificial silk at an adequate salary, which is to be agreed upon from case to case, and that you, during the life of this contract, will not participate neither materially or actively in any competing undertaking (enterprise) (concern).

"At the same time you bind yourself not to

divulge the nature (contents) of patents and processes nor of this agreement.

"Kindly acknowledge receipt of this contract and your acceptance.

"Yours respectfully,

"B. BORZYKOWSKI."

As shown by the above, the terms of the contract are contained in the letter signed by defendant, and accepted in a separate letter signed by the plaintiff. In a subsequent letter defendant undertook to explain some of the terms contained in the original letter, and it is urged by counsel that this is a part of the original contract. But since there is nothing in the record to show that plaintiff concurred in that explanation, or interpretation, as contained in the third letter, it cannot be considered as a part of the original agreement and will be disregarded.

The main defense is that plaintiff breached the contract by entering into the services of a competing company, disclosing the nature of the patents and processes owned by the defendant, supplemented by the further defense that plaintiff is only entitled to ten per cent. of cash money actually received.

Defendant further sought to show that there was no consideration for the contract, and that he was coerced into entering into the same. The facts do not bear out this contention.

It appears that from 1911 to 1914 both plaintiff and defendant were connected with a Berlin concern, manufacturing photo films, the plaintiff in the capacity of a chemist, and the defendant as general manager of the company; that plaintiff possessed technical knowledge advantageous to the

defendant is beyond question. This is clearly indicated by the contract.

In 1915, while still connected with the Berlin film company, Luft entered war service, he states, in the German Red Cross. About the same time, the defendant came to America to exploit his patents and processes in the manufacture of artificial silk. He organized in Cleveland, Ohio, a company called the National Artificial Silk Company, and, after experimenting for a time, increased the capital stock to $5,000,000. A large plant was constructed which was equipped with machinery for the manufacture of artificial silk. In 1918 this company went into bankruptcy, and a new company was organized by the defendant, for the purpose of the manufacture of silk. The new company purchased the assets of the National Artificial Silk Company. Out of these promotions, defendant received large rewards, of which we will speak later.

Plaintiff continued in the service of the Red Cross, as he states, until some time in 1918. In the meantime, he had continued his scientific investigations with reference to the process of the manufacture of artificial silk. The record shows that plaintiff during this time was in straitened circumstances, and he and his family were in need; that he had written frequently to defendant but was unable to receive any satisfactory directions or instructions from him. In the meantime he had received letters from a company in Sweden, which was engaged in the manufacture of artificial silk. The record shows that he delayed negotiating with the Swedish company out of consideration for his obligation under the contract in

question. Not being able to receive directions or satisfactory answers to his letters to the defendant, and having ascertained that the Swedish company did not use any of the processes or patents owned by the defendant, he entered the service of the Swedish company as technical man. While engaged in the service of the Swedish company he was informed by a brother-in-law, a resident of New York City, of the exploitations of the defendant in the promotion of the manufacture of artificial silk. Feeling that he had interests here which were not being protected, and being unable to receive an accounting from the defendant, he, with the consent of the Swedish company, left for America. While on the way the petition in this case was filed, verified by the brother-in-law, and later, upon his arrival, approved by the plaintiff.

The good faith of the filing of the petition is questioned by the defendant, and the explanation given by the plaintiff and his brother-in-law, one Feldine, is that the defendant was closing up all his affairs and getting ready to leave the country, and that haste was necessary to preserve the rights of the plaintiff.

We have thus stated but the salient features of the facts as disclosed by the record. Vast volumes of evidence are contained in the record, con- sisting of oral testimony, depositions taken in for- eign lands, a large amount of correspondence, and other exhibits. It would be impossible in the scope of a reasonable opinion to touch on all the phases of this case. Much of the evidence is immaterial and consists of vituperations, charges and counter-charges of bad faith and dishonesty, and no good

purpose would be served in reviewing the facts further than above stated.

We are of opinion that the contract is not ambiguous and is clear and understandable, and is a binding contract; that the only question of defense is whether or not plaintiff breached the contract by his engagement with the Swedish company in such manner as to forfeit his rights to his share of ten per cent. of the benefits accruing to the defendant through the exploitation of the processes in America.

The claim of the defendant, that ten per cent., as expressed in the contract, only had reference to actual cash money received is not tenable. The terms of the contract say "ten per cent. of the benefits of every kind and description (draught for draught)," which means an accounting upon the receipt of all benefits derived by the defendant.

It is provided in the contract that plaintiff "will not participate neither materially or actively in any competing undertaking (enterprise) (concern)."

The clause in the contract binding plaintiff not to divulge the nature of the patents and processes was not violated by plaintiff according to the evidence. He states he did not disclose or divulge any of the patents or processes owned by defendant. The only question then is, was plaintiff's engagement with the Swedish company participating materially or actively with a competing undertaking? The evidence is that the processes used by the Swedish company were not the processes of the defendant; that the defendant held no patents on his processes in Sweden; that the

Swedish company did not engage in export or international trade, and did no export business; that for a long period prior to plaintiff's entering the employ of the Swedish company he was in dire financial distress and had repeatedly written and asked the defendant for relief under the contract; that defendant did respond in the sum of 1,000 marks; that the Berlin company was largely indebted to plaintiff for back salary and that he was unable to procure payment thereof, notwithstanding defendant had been the general manager of that concern; and that plaintiff wrote defendant that he was forced by necessity to take up some employment in his profession.

Some letters were written by defendant in answer to the communications of plaintiff, but, as disclosed by the circumstances in this case, they were misleading, evasive, and showed clearly a desire and an attempt to avoid the obligation under the contract.

Under the facts we are of opinion that plaintiff did not participate materially or actively in a competing concern. If there was a breach of this clause of the contract by plaintiff, it was merely technical, and would not work a forfeiture of his rights. Moreover, the technical breach, if such, would be fully justified in the light of the conduct of the defendant toward plaintiff with reference to the contract.

It will be noted further that plaintiff did not enter the employ of the Swedish company until July, 1919. The accumulations and benefits of the promotion by the defendant, all had accrued prior to that date.

The remaining question is then as to the accounting.

Defendant, as above stated, claims that under the terms of the contract plaintiff is only entitled to ten per cent. of the cash money received. This is not the contract, and was not so regarded by the parties. In a letter from defendant to plaintiff, under date of January 30, 1920, is found the following:

"When I arrived here in 1915 and didn't receive the demonstration machines I had to pay tens of thousands of dollars out of my own pocket until I could patch together a demonstration equipment here. The demonstration was not accepted as successful until the summer of 1916 and all that I received in cash was fifteen thousand dollars. The other remuneration for patents and processes was given me in shares and royalty pledges. After the deductions of the commissions and so forth, I put at your disposal ten per cent. in Marks of my net receipts; that is to say, I sent the money through a local bank to the German bank with instructions that that was intended for you. As I found out later, the money never reached there, although I have the original receipt of the local bank.

"Owing to the war I could not very well send you the shares. (They are still lying in the envelope addressed to you.) It would have had no point, for you could have done nothing with them there during the war."

This quotation shows conclusively that the parties considered, by the terms of the contract, that plaintiff was entitled to ten per cent. of all profits in whatever form received by the defendant,

whether stocks, bonds, cash, or benefits in any other form. Moreover, the agreement so provides in express terms under the clause "benefits of every kind and description."

What benefits then has the defendant received out of which plaintiff is entitled to ten per cent.?

The defendant admits receiving from the American Borvisk Company, the company organized to take over the assets of the old National Artificial Silk Company, bankrupt, 2,000 shares of preferred stock, 30,000 shares of class A, non-voting common stock, and 30,000 shares of class B voting stock. As to the amount of cash received by the defendant, growing out of these transactions, the evidence is not clear. The defendant, on cross-examination, evaded answering the question as to the amount of cash received. There is evidence tending to show that he disposed of 21,000 shares of stock for the sum of $210,000. Defendant denies that he received the cash, but states that it was in the nature of a paper transaction, in turning the stock over to a holding company. He admits he received various sums for his patents and processes and expenses, and later filed a claim for services rendered the National Artificial Silk Company, in the bankruptcy proceeding, and this sum was allowed.

The trial court found that the amount of cash received by the defendant, justified by the evidence, was $50,000, giving defendant the benefit of the doubt. We will leave the sum at that figure. Out of this amount, the plaintiff would be entitled to ten per cent., being $5,000, in cash.

In view of the uncertainty of the evidence as to the 21,000 shares sold, since there is sufficient

stock in the hands of the defendant, or the Cleveland Trust Company, to give plaintiff the full ten per cent. of the stock, we will treat these profits in stock rather than in cash.

A decree may be presented finding the equities in favor of the plaintiff, and requiring the defendant to account to plaintiff for 200 shares of the preferred stock of the American Borvisk Company; 3,000 shares of class A non-voting common stock of that company; and 3,000 shares of class B voting stock of that company. Specific performance will be decreed as to this stock.

The decree may further provide judgment against the defendant in the sum of $5,000 in money.

*Decree accordingly.*

CUSHING and BUCHWALTER, JJ., concur.

Judges of the First Appellate District, sitting in place of Judges VICKERY, SULLIVAN and LEVINE, of the Eighth Appellate District.